**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

SOUTHERN DISTRICT OF MISSISSIPPI
**FILED**

JUL 19 2016

ARTHUR JOHNSTON
BY_____ DEPUTY

| | |
|---|---|
| **HOPE ELLY,** )<br><br>**Plaintiff,** )<br><br>v. )<br><br>**PREMIER ENTERTAINMENT** )<br>**BILOXI, LLC.,** )<br><br>**Defendant.** )<br> ) | **CIVIL ACTION NO.**<br><br>1:16cv268LG-RHW |

**COMPLAINT**

**COMES NOW** the Plaintiff, Hope Elly hereinafter ("Plaintiff") by and through her undersigned counsel, and hereby files this Complaint against the Defendant for injunctive relief, attorney's fees and costs pursuant to 42 U.S.C. §12181, et. seq, ("the Americans with Disabilities Act") and states as follows:

**JURISDICTION, PARTIES, AND STANDING**

1. This is an action for declaratory and injunctive relief pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. §12181, et. seq., (hereinafter referred to as the "ADA") and its implementing regulations. This Court is vested with original jurisdiction under 28 U.S.C. §1331 and §1343.

2. Venue is proper in this Court, the United States District Court for the Southern District of Mississippi, pursuant to Title 28, U.S.C. §1391 and the Local Rules of the United States District Court for the Southern District of

[1]

Mississippi.

3. Plaintiff, Hope Elly, suffers from cerebrovascular accidents, which are more commonly known as strokes. These strokes have effected both her motor and sensory functions, which causes inactivity and/or paralysis of the muscles; therefore, maintaining balance, walking, and the ability to use her hands are extremely difficult. As a result of her disability, she relies on mobility aids for locomotion. The extent of Ms. Elly's physical problems limits her ability to care for herself, perform manual tasks, walk, stand, lift, bend, grab, twist, and work, all of which are major life activities pursuant to 42 U.S.C. § 12102 (2) (A). Ms. Elly is, accordingly, disabled pursuant to the Americans with Disabilities Act, in that she suffers a physical impairment substantially limiting one or more major life activities. 42 U.S.C. § 12102; *See also,* 28 C.F.R. § 36.104.

4. Defendant, Premier Entertainment Biloxi LLC., (hereinafter "Premier Entertainment") is a Limited Liability Company that is both registered to do business and is conducting business within the State of Mississippi sufficient to create both general and specific in personam jurisdiction. Upon information and belief from property records on the Harrison County Geographical Information Systems database (GIS), as well as the Harrison County Probate records, Premier Entertainment Biloxi, LLC, "owns" the real property and its improvements at 777 Beach Blvd., Biloxi, Mississippi, 39530. 42 U.S.C. § 12182. Upon further information and belief, Premier

Entertainment Biloxi, LLC., "operates" the establishment located at 777 Beach Blvd., Biloxi, Mississippi, 39530, more commonly known has Hard Rock Hotel & Casino. The Hard Rock Hotel & Casino is a commercial facility in that the units are intended for nonresidential use and affect commerce. 42 U.S.C. § 12181(2)((A). Moreover, the establishment features restaurants, a hotel, casino games, shopping, and other entertainment which qualifies as a place of public accommodation pursuant to 42 U.S.C. § 12181(7).

5. Pursuant to 42 U.S.C. § 12181(7) and 28 C.F.R. § 36.104, the Defendants' establishment is a place of public accommodation in that it is a place of lodging offering guests rooms for stays that are short term in nature; variety of restaurants for food and drink, retail items for purchase, and other entertainment activities to the public. Accordingly, it is covered by the ADA and must comply with the Act.

6. Defendant's hotel itself is a place of public accommodation pursuant to 42 U.S.C. § 12181(7)(a), which provides:

> The following private entities are considered public accommodations for purposes of this subchapter, if the operations of such entities affect commerce:
>
> (A) an inn, hotel, motel, or other place of lodging, except for an establishment located within a building that contains not more than five rooms for rent or hire and that is actually occupied by the proprietor of such establishment as the residence of such proprietor.

In particular, the hotel rooms are a "place of lodging", pursuant to 28 C.F.R. § 36.104, which provides:

> *Place of public accommodation* means a facility operated by a private entity whose operations affect commerce and fall within at least one of the following categories –
>
> (1) Place of lodging, except for an establishment located within a facility that contains not more than five rooms for rent or hire and that actually is occupied by the proprietor of the establishment as the residence of the proprietor. For purposes of this part, a facility is a "place of lodging" if it is –
>
> > (i) An inn, hotel, or motel; or
> >
> > (ii) A facility that –
> >
> > > (A) Provides guest rooms for sleeping for stays that primarily are short-term in nature (generally 30 days or less) where the occupant does not have the right to return to a specific room or unit after the conclusion of his or her stay; and
> > >
> > > (B) Provides guest rooms under conditions and with amenities similar to a hotel, motel, or inn, including the following –
> > >
> > > > (1) On- or off-site management and reservations service;
> > > >
> > > > (2) Rooms available on a walk-up or call-in basis;
> > > >
> > > > (3) Availability of housekeeping or linen service; and
> > > >
> > > > (4) Acceptance of reservations for a guest room type without guaranteeing a particular unit or room until check-in, and without a prior lease or security deposit.

[4]

7.  Ms. Elly's stay at the hotel establishes their conformity to the elements of 28 C.F.R. § 36.104, because the hotel was rented to her for a short-term stay, (less than 30 days); Upon Ms. Elly's arrival at the Hard Rock Hotel, she was required to check in at the front desk with an employee of Hard Rock; Ms. Elly had the opportunity to have housekeeping services during her stay; Ms. Elly did not have the right to return to her specific room after she checked-out of her hotel room at the front desk; the services provided were similar to other hotels or motels in that there was onsite employees and a reservation system, as well as reservations accepted without guaranteeing a particular room until check –in and without a prior lease; and housekeeping or linen service was available.

8.  All events giving rise to this lawsuit occurred in the Southern District of Mississippi and the Defendants are citizens thereof.

9.  Plaintiff Hope Elly vacations in Biloxi, Mississippi because she enjoys the relaxing beach environment as well as the entertainment Biloxi offers. Ms. Elly enjoys the laid-back beach environment and resorts that offer all sorts of activities and entertainment. More specifically, Ms. Elly enjoys Hard Rock Hotel & Casino, which is the subject of this action. Ms. Elly specifically and definitely intends to continue to go to Hard Rock when she travels to Biloxi. Ms. Elly does not know exactly when she will go back to Hard Rock, because she has not planned out every trip nor every meal for the rest of her life. Such specific planning is not necessary to invoke the ADA. See, *e.g. Parr v. L & L*

*Drive Inn Restaurant* 96 F. Supp.2d 1065, 1079 (D. Haw 2000) and *Segal v. Rickey's Restaurant and Lounge, Inc.* No. 11-61766-cn, (S.D. Fla 2012)("*Specification as to date and time of return to this public accommodation is impossible due to the nature of the event. Fast food patrons visit such restaurants at the spur of the moment*".). Ms. Elly definitely intends to return to Hard Rock Hotel & Casino, however, not only to sleep, play casino games, drink, eat, and enjoy the entertainment and other activities but also to see if Hard Rock will do the repairs to become ADA compliant. Ms. Elly will continue to return even after the repairs are made because Hard Rock Hotel & Casino is an affordable and convenient place to vacation that offers a wide variety of goods and services and entertainment.

10. Ms. Elly and her best friend planned a vacation at the Hard Rock Hotel & Casino in June, 2016. On or around June 2016, Ms. Elly went online to determine if the Hard Rock Hotel would meet her accessibility needs but was unable to do so as a result of Hard Rock's failure to properly identify and describe the accessible features of the hotel rooms on the website. As a result of the discriminatory acts by Defendant, Ms. Elly further searched through the Hard Rock Hotel & Casino website to determine if the hotel had any accessible features at all, or at the very least, assess whether the Hard Rock hotel would be large enough for her to make do since Hard Rock Hotel failed to identify any of its accessible features. Her review of the Hard Rock Hotel website was inconclusive because the website lacked sufficient information. Ultimately, Ms.

Elly decided to go to the Hard Rock Hotel, made reservations, and went there with her best friend. During Ms. Elly's visit she went from the parking lot to the entranceways, from the parking lot to and throughout the hotel, including her rented hotel room, the services areas, bathrooms, pool area, casino, Ruth's Chris, paths of travel, common areas, recreational areas, and the fitness center. Ms. Elly accordingly, has standing as to all the areas she visited. During this vacation, she encountered barriers in the areas described above as well as barriers described more specifically throughout the Complaint. Ms. Elly wants to return to Hard Rock Hotel & Casino and Ms. Elly will definitely do so in the future, in particular to see if repairs are being made to achieve and maintain compliance, even after initial repairs are made.

11. Because of the barriers described below in paragraph 23 and throughout the Complaint, Plaintiff has been denied full and equal enjoyment of the Defendants premises on the basis of her disabilities.

12. Ms. Elly accordingly, has standing to pursue this case because (1) she is disabled, pursuant to the statutory and regulatory definition; (2) the Defendant's hotel, casino and other entertainment complex is a place of public accommodation, pursuant to the statutory and regulatory definition; and (3) she has been denied full and equal enjoyment of the Defendant's premises on the basis of her disability. As described more fully in paragraph 21, there exists a genuine threat of imminent future injury.

**COUNT ONE**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**
**42 U.S.C. § 12182(b)(2)(A)(iv) and (v)**

13. On or about July 26, 1990, Congress enacted Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12181 et.seq. Commercial enterprises were provided one and a half years from enactment of the statute to implement its requirements. The effective date of Title III of the ADA was January 26, 1992. (42 U.S.C. §12181; 20 C.F.R. §36.508 (A); *See also*, § 36.304).

14. Plaintiff is informed and believes based on publicly available information, that the original Hard Rock Hotel was was first constructed in 2005 and then re-constructed and/or altered in 2006 after hurricane Katrina. The reconstruction and/or alterations included but is not limited to rebuilding the entire casino, renovating the hotel, renovating and re-constructing the low-rise hotel tower, the parking Garage and Pool Deck area. More specifically, upon further information and belief re-construction and alterations to the property consisted of the following:

   a. <u>**Hotel Tower**</u>: demolition and removal of damaged partitions, ceilings, millwork and floors in Guestrooms; Repairing balcony structures; Replacing handrails; Replacing finishes and surfaces in hotel rooms; Replacing doors; Alterations to the Elevators; Alterations to the Plumbing and among other alterations;

   b. <u>**Casino and Lower Level Valet Parking:**</u> was completely re-constructed at the existing location with a similar new architectural design which

[8]

included parking spaces for two hundred twenty (220) vehicles beneath the Hard Rock Casino;

c. **Low Rise Building**: consisted of alterations and reconstruction of the entrance lobby, valet parking, Hard Rock Live Performance Venue, three retail outlets, public restrooms, Hard Rock Live VIP Lounge and Mezzanine, and the Spa/Salon including but not limited to demolition and the removal of damaged partitions, floors, ceilings, millwork and equipment; Demo and repair damaged steel members above loading dock and damaged columns at grid line K; reconstructing damaged composite slab areas; Replace damaged miscellaneous metal fabrications; Replace aluminum & glass handrails at promenade; improvements and alterations to the Metal Column Covers, millwork, stone tops; replacing the doors and frames; Replace aluminum and glass doors and interior storefront at the vestibule; reconstructing valet parking entry storefront; reconstructing interior glass and glazing; reconstructing damaged / missing metal stud framing and drywall; reconstructing all damaged drywall; reconstructing all damaged finishes and surfaces; reconstructing all toilet partitions and specialties; reconstructing Elevators; Replace Escalators; alterations to the Plumbing system.

d. **Resort Style Pool and Beach Area:** reconstruction of the pool, swim up pool bar, pool grille, covered pool club which included but is not limited to alterations to the pool and spa finishes and surfaces; reconstruction of

[9]

the pool decking; reconstruction of the pool bar; reconstruction of the cabanas; alterations to the screen wall around pool site; alterations to the pool club and pool grille finishes.

e. **Parking Garage:** reconstruction of the parking garage that included a total of 1,238 self-park spaces, 320 valet parking spaces, 50 dedicated spaces for the small craft harbor and 3 bus arrival spaces which included but is not limited to alterations to the foundation of the garage; ramps; and stairwells.

f. **Hard Rock Cafe Shell Tenant Space:** reconstruction of the sheetrock to 5 feet above finished floor on exterior side of shell space demising wall, reconstruction of broken glass and damaged aluminum curtain wall system on building exterior; reconstruction of exterior stairs; reconstruction of handrails and balcony and stairs. Alterations to the balcony decks; reconstruction of exterior wall framing and exterior sheathing; among other improvements with an interior build-out of the Hard Rock Café;

g. **Hard Rock Retail Tenant Space:** reconstruction of the sheetrock to 5 feet above finished floor on exterior wall, reconstruction of exterior wall framing and exterior sheathing; among other improvements with an interior build-out of the Hard Rock Café;

h. **Ruth's Chris Steakhouse:** reconstruction of the sheetrock and all wall framing; demolition and reconstruction of all existing finishes and

surfaces; Build out of tenant space;

15. Additionally, Plaintiff is informed and believes sometime between 2011 and 2012 Hard Rock Hotel made 1.3 million dollars of improvements to its Hotel & Casino. Plaintiff is further informed and believes based on publicly available information, that the Hard Rock Hotel & Casino expanded its facility sometime after July 12, 2012. The Hotel expansion in 2012 included but is not limited to the designing and constructing a 12 story tower with 154 hotel rooms (14 suites with balconies, 7 on the first level and 7 on the top level, with all facing the south view. 14 guest rooms consisting of unique design that maximized views from bedrooms and bathrooms); an enclosed way of passage to the existing hotel lobby; resurfacing of the parking lot and parking garage and other parking lot improvements.

16. The ADA was enacted requiring that facilities constructed prior to January 26, 1992, are considered an "existing" "facility, such that those facilities must remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). All "alterations" made to existing facilities after January 26, 1992, and all "new construction" after January 26, 1993, must be *readily accessible to and usable by individuals with disabilities*, including *individuals who use wheelchairs*. 42 U.S.C. § 12183(a) and (b). 28 *C.F.R.* § 36.402. "Readily accessible to and usable by. . ." is the "new construction" standard, which requires compliance with the Department of Justice standards. 42 U.S.C. § 12183(a)(1); 28 *C.F.R.* § 36.406. The only defense for failing to provide readily

accessible and usable buildings constructed under the "new construction" standards is if the design and construction of the building to be readily accessible and usable is "structurally impracticable". 42 U.S.C. § 12183(a)(1). The "structural impracticability" defense applies only in rare circumstances of extraordinary terrain. 28 *C.F.R.* § 36.401(c). "Readily accessible to and usable by. . ." is also the "alterations" standard. 42 U.S.C. § 12183(a)(2). "Alterations" must be made to the maximum extent feasible. 42 U.S.C. § 12183(a)(2); 28 *C.F.R.* § 36.402. An alteration is a change to a place of public accommodation or commercial facility that affects or could affect the usability of the facility or any part thereof. 28 *C.F.R.* § 36.402(b).

17. New construction and alterations must comply with either the Justice Department's 1991 Standards for Accessible Design, or the 2010 Standards for Accessible Design. 28 *C.F.R.* § 36.406 establishes whether the 1991 Standards for Accessible Design or 2010 Standards for Accessible Design apply: New construction and alterations subject to §§ 36.401 or 36.402 shall comply with the 1991 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is before September 15, 2010, or if no permit is required, if the start of physical construction or alterations occurs before September 15, 2010. 28 *C.F.R.* § 36.406(a)(1). New construction and alterations subject to §§ 36.401 or 36.402 shall comply either with the 1991 Standards or with the 2010 Standards if the date when the last application for a building permit or permit extension is

[12]

certified to be complete by a State, county, or local government is on or after September 15, 2010, and before March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after September 15, 2010, and before March 15, 2012. 28 *C.F.R.* § 36.406(a)(2). New construction and alterations subject to §§ 36.401 or 36.402 shall comply with the 2010 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is on or after March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after March 15, 2012.

18. For the violations at issue in this case, both the 1991 and 2010 Standards for Accessible Design are identical for the parking lot, accessible route, maneuvering clearance, paths of travel, and practice/policy violations.

19. The Defendant has discriminated, and continues to discriminate, against Plaintiff, and others who are similarly situated, by denying full and equal access to, and full and equal enjoyment of goods, services, facilities, privileges, advantages and/or accommodations at Hard Rock Hotel & Casino in derogation of 42 U.S.C. § 12101 et. seq., and as prohibited by 42 U.S.C. § 12182 et-seq., and by failing to remove architectural barriers pursuant to 42 U.S.C. § 12182(b)(2)(A)(iv), where such removal is readily achievable, or, even if the removal is not readily achievable, by failing to use alternative methods that are readily achievable, 42 U.S.C. § 12182 (b)(2)(A)(v).

20. As described above, prior to the filing of this lawsuit, Plaintiff was denied full and safe access to all of the benefits, accommodations and services offered to individuals without disabilities within and about the Defendant's facility. Plaintiff's access was inhibited by each of the described architectural barriers detailed in this Complaint which remain at the facility in violation of the ADA. Because of the foregoing, Plaintiff has suffered an injury-in-fact in precisely the manner and form that the ADA was enacted to guard against.

21. Plaintiff has definite plans to return to Hard Rock Hotel & Casino in the future, as described above in paragraph 9 and 10. Plaintiff will return to Hard Rock in the next few months not only to shop, eat, drink, and enjoy other entertainment, but also to see if Hard Rock Hotel & Casino has repaired the barriers, and Plaintiff will continue to do so. Even when Defendant has repaired the barriers, Plaintiff will continue staying, shopping, eating, drinking, and vacationing there, as Ms. Elly has in the past. Absent remedial action by Defendant, Plaintiff will continue to encounter the architectural barriers, and the discriminatory policies, practices, and procedures described herein and as a result, be discriminated against by Defendant on the basis of her disability. Due to the definiteness of Plaintiff's future plans to visit the subject facility, there exists a genuine threat of imminent future injury. The Eleventh Circuit, held in *Houston v. Marod Supermarkets*, when architectural barriers have not been remedied "*there is a 100% likelihood that plaintiff... will suffer the alleged injury again when he returns to the store.*" Due to the definiteness of Plaintiffs future plans to

continue visiting the subject facility, there exists a genuine threat of imminent future injury.

22. Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice, Office of the Attorney General, promulgated Federal Regulations to implement the requirements of the ADA. 28 C.F.R. Part 36.

23. Plaintiff has been throughout all the parking lot at the Facility and from the parking lot to the entrances, to and throughout the retail areas, the retail areas themselves, from the entrances to and throughout the restrooms, the restrooms themselves; from the entrances to and throughout the dining areas indoor and outdoors, the dining areas themselves, the common areas including the hotel lobby and the casino, the sales and service counters, throughout circulation paths and accessible routes, from the parking lot to and throughout the common areas including the retail and service areas, paths of travel, and in particular but not limited to all of which is more specifically described below. Moreover, Defendants facility violates the ADA in the hotel guest rooms, pool area, parking lot, the entranceways, from the parking lot to and throughout the common areas and the retail and service areas, bathrooms, paths of travel, common areas, casino gaming areas, and in particular but not limited to the following specifically described areas that Ms. Elly encountered:

**Casino Area**

a.      The facility provides casino games for able bodied individuals but fails to provide that same experience by providing ADA accessible arcade games

to non-able bodied individuals, including but not limited to the following elements:

    i. The casino games do not provide the required clear floor or ground space for an individual with a disability to approach the game;

**b.** The facility provides service counters for able-bodied individuals but fails to afford non-able-bodied individuals the same experience by not providing an ADA accessible counter including but not limited to the following elements:

    i. The service counters exceed the maximum allowed height of 36 inches above the finished floor;

    ii. There is no ADA accessible counter provided that is arranged for a forward or side approach;

    iii. There is no ADA accessible service counter that extends the same depth as the non-accessible portion of the non-accessible counter;

    iv. The Facility fails to maintain the accessible features of the counter that are required to be readily accessible to and usable by individuals with disabilities;

**Bar Area**

    **c.**    The facility provides a bar for able bodied individuals to order drinks but fails to provide that same experience to non-able bodied individuals by not providing an ADA accessible bar including but not limited to the following elements:

        **i.** There is no bar counter that is measured 28 inches minimum and 34 inches maximum above the finished floor;

        **ii.** The bar seating fails to have the required level of ADA accessible seating;

        **iii.** There is no bar area that provides the required 30 x 48 inches of clear floor or ground space for a forward approach;

    **d.**    The floor mat fails to be secured to the floor

**Ben & Jerry Ice Cream**

    **a.**    The facility provides a sales/service counter for able-bodied individuals but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that dining experience afforded to other individuals without disabilities, including but not limited to the following elements:

i. There is no ADA accessible portion of the sales/service counter that extends the same depth as the non-accessible portion of the sales/service counter;

ii. The sales/service counter exceeds the maximum allowed height of 36 inches above the finished floor;

iii. There is no ADA accessible sales/service counter provided 28 inches minimum and 34 inches maximum above the finished floor that allows for the required knee and toe clearance;

iv. The facility provides a point of sale machine to transact business at the sales/service counter for able-bodied individuals, but fails to provide the same level of service to non-able-bodied individuals by providing a point of sale machine at an accessible portion of the counter;

v. The facility fails to maintain the accessible features at the sales/service counter that are required to be readily accessible to and usable by individuals with disabilities;

b. The facility provides a sales/service counter for able-bodied individuals but fails to afford non-able-bodied individuals the full and equal enjoyment to participate in or benefit from, the goods, services, facilities, privileges, advantages, or accommodations that is a comparable experience to that of able bodied individuals;

[18]

c. The restaurant provides seating at all portions of the dining areas for able-bodied individuals but fails to provide 5% ADA accessible seating at all portions of the dining areas for non-able-bodied individuals;

d. The facility fails to have or otherwise fails to follow any policies, practices, or procedures on maintaining in operable working condition the features of the purported accessible counter that are required to be readily accessible to and usable by individuals with disabilities;

e. The facility affords an experience to individuals with disabilities that is not an equal experience that is afforded to individuals without disabilities by denying disabled individuals the opportunity to participate in the viewing and selecting process for their ice cream cone/bowl;

**Business Center**

f. The current practice at this facility is to place a trash can within the 30x48 inches of required clear floor space for a disabled individual to approach the hallway telephone, which prohibits individuals with disabilities from being able to have the same opportunity to benefit from the goods, services, facilities, privileges, advantages, or accommodations as individuals without disabilities;

g. The entrance door to the business center is a recessed door that fails to provide the required 18 inches of latch side clear ground surface for a wheelchair user to be afforded the opportunity to enter the room;

[19]

**h.**    The door to the business center is a recessed door that fails to provide the required 12 inches of latch side clear ground surface for a wheelchair user to be afforded the opportunity to exit the room;

## Casino Bathroom

**i.**    When exiting the restroom there is not 12 inches of clear floor space on the push side of the door to give a wheelchair user the opportunity to approach the door;

**j.**    The facility provides a toilet compartment for able-bodied individuals but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that shopping experience afforded to other individuals without disabilities, including but not limited to the following elements:

      **i.**    The toilet compartment door fails to have door pulls located on both sides;

      **ii.**    The centerline of the water closet exceeds the maximum allowed distance of 18 inches ;

      **iii.**    The facility fails to maintain the accessible features within the toilet compartment that are required to be readily accessible to and usable by individuals with disabilities;

k.   The facility provides a toilet compartment for able-bodied individuals but fails to afford non-able-bodied individuals the full and equal enjoyment to participate in or benefit from, the goods, services, facilities, privileges, advantages, or accommodations that is a comparable experience to that of able bodied individuals, including but not limited to the following elements:

   i.   The bottom reflecting surface of the mirror exceeds the maximum allowed height of 40 inches above the finished floor;

   ii.   The lavatory sink does not provide the required knee clearance for a wheelchair user to approach the sink;

   iii.   The facility fails to maintain the accessible features at the sales/service counter that are required to be readily accessible to and usable by individuals with disabilities;

**Elevator by Valet Counters**

l.   The floor mats are not stable, firm, or otherwise secured to the floor;

m.   The facility fails to provide floor designations on the elevator door jambs;

n.   The emergency control buttons centerline fails to measure the minimum required height of 35 inches above the finished floor;

[21]

**First Floor Check-In Counter**

o.   The facility provides a sales/service counter for able-bodied individuals but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that shopping experience afforded to other individuals without disabilities, including but not limited to the following elements:

   i.   There is no ADA accessible portion of the sales/service counter that extends the same depth as the non-accessible portion of the sales/service counter;

   ii.   The sales/service counter exceeds the maximum allowed height of 36 inches above the finished floor;

   iii.   There is no ADA accessible sales/service counter provided 28 inches minimum and 34 inches maximum above the finished floor that allows for the required knee and toe clearance;

   iv.   The facility fails to maintain the accessible features at the sales/service counter that are required to be readily accessible to and usable by individuals with disabilities;

p.   The facility provides a sales/service counter for able-bodied individuals but fails to afford non-able-bodied individuals the full and equal enjoyment to participate in or benefit from, the goods, services, facilities,

privileges, advantages, or accommodations that is a comparable experience to that of able bodied individuals;

**Fitness Center**

q. The facility provides a fitness center for able-bodied individuals but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that shopping experience afforded to other individuals without disabilities, including but not limited to the following elements:

    i. The facility fails to provide at least one type of each exercise machine with the clear floor or ground surface for a wheelchair user to be able to approach the equipment;

    ii. The fitness center fails to provide 30x48 inches of clear floor or ground space around the hand-sanitizer machine;

    iii. The current practice at this facility is to place a trash can within the required 30x48 inches of clear floor or ground space around the hand-sanitizer machine which prohibits individuals with disabilities from being able to have the same opportunity to benefit from the goods, services, facilities, privileges, advantages, or accommodations as individuals without disabilities;

    **iv.**  When exiting the fitness center there is not 12 inches of clear floor space on the push side of the door to give a wheelchair user the opportunity to approach the door;

    **v.**  The facility fails to maintain the accessible features within the fitness center that are required to be readily accessible to and usable by individuals with disabilities;

    **vi.**  The facility provides a fitness center for able-bodied individuals but fails to afford non-able-bodied individuals the full and equal enjoyment to participate in or benefit from, the goods, services, facilities, privileges, advantages, or accommodations that is a comparable experience to that of able bodied individuals;

### 3rd Floor Elevator Near Fitness & Spa

**r.**  The signage obstructs the required clear floor or ground surface for a wheelchair user to approach the call control button;

### Hard Rock Café Rock Shop

**s.**  The facility provides an information service counter for able-bodied individuals but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that shopping

experience afforded to other individuals without disabilities, including but not limited to the following elements:

    **i.** There is no ADA accessible portion of the information service counter that extends the same depth as the non-accessible portion of the sales/service counter;

    **ii.** The information service counter exceeds the maximum allowed height of 36 inches above the finished floor;

    **iii.** The facility fails to maintain the accessible features at the information service counter that are required to be readily accessible to and usable by individuals with disabilities;

**t.** The facility provides an information service counter for able-bodied individuals but fails to afford non-able-bodied individuals the full and equal enjoyment to participate in or benefit from, the goods, services, facilities, privileges, advantages, or accommodations that is a comparable experience to that of able bodied individuals;

**u.** Throughout the accessible route there is merchandise that is for sale to the public that obstructs the path of travel;

**v.** The merchandise display table obstructs the required 48 inches of perpendicular clear floor or ground space to enter/exit the rock shop;

**w.** The current practice at this facility is to maintain the merchandise display table within the required 48 inches of perpendicular clear floor or ground

[25]

space to enter/exit the rock shop which prohibits individuals with disabilities from the full and equal enjoyment of the goods and services of the rock shop;

## Hard Rock Café

x.   The facility provides a bar counter for able-bodied individuals but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that shopping experience afforded to other individuals without disabilities, including but not limited to the following elements:

   i.   There is no ADA accessible portion of the bar counter that extends the same depth as the non-accessible portion of the bar service counter;

   ii.  The bar counter exceeds the maximum allowed height of 36 inches above the finished floor;

   iii. There is no ADA accessible bar counter provided 28 inches minimum and 34 inches maximum above the finished floor that allows for the required knee and toe clearance;

   iv.  The facility fails to maintain the accessible features at the bar counter that are required to be readily accessible to and usable by individuals with disabilities;

     v.  The bar counter fails to provide at least five percent (5%) ADA accessible seating;

**y.**    The facility provides a bar counter for able-bodied individuals but fails to afford non-able-bodied individuals the full and equal enjoyment to participate in or benefit from, the goods, services, facilities, privileges, advantages, or accommodations that is a comparable experience to that of able bodied individuals;

**z.**    Throughout the accessible route there is merchandise that is for sale to the public that obstructs the path of travel;

**aa.**    The floor mat is not stable, firm, or otherwise secured to the floor;

**Hotel Restroom**

**bb.**    When entering and exiting the restroom, the accessible route has a 180 degree turn that is 43 inches wide leaving the turn and a width of 43.5 inches at the turn itself which prohibits a wheel chair user from full and equal access to the restroom;

**cc.**    There is signage for able-bodied individuals identifying and designating an area of the store as "restrooms" however there is no signage displaying the international symbol of accessibility identifying restrooms as ADA accessible;

**dd.**    The facility provides a toilet compartment for able-bodied individuals but fails to give non-able-bodied individuals the same opportunity to

participate in or benefit from, the goods, services, facilities, privileges, advantages, or accommodations at the facility, including but not limited to the following elements:

   i.  The toilet compartment door is not self-closing;

   ii.  The toilet compartment door fails to have door pulls located on both sides;

   iii.  The baby changing table obstructs the 60x56 inches of required clear floor space for a disabled individual to transfer onto the water closet;

   iv.  The centerline of the water closet fails to meet the minimum required distance of 16 inches;

   v.  The toilet paper dispenser is not properly located 7 inches minimum and 9 inches maximum from the front of the water closet;

   vi.  The baby changing table fails to meet the required distance of 12 inches;

   vii.  The rear wall grab bar is not properly located 12 inches on the closed side of the toilet room and 24 inches on the transfer side;

   viii.  The coat hook exceeds the maximum allowed unobstructed reach range of 48 inches above the finished floor;

     **ix.** The baby changing table exceeds the maximum allowed unobstructed reach range of 48 inches above the finished floor;

     **x.** The facility fails to maintain the accessible features within the toilet compartment that are required to be readily accessible to and usable by individuals with disabilities;

     **xi.** The facility provides a toilet compartment for able-bodied individuals but fails to afford non-able-bodied individuals the full and equal enjoyment to participate in or benefit from, the goods, services, facilities, privileges, advantages, or accommodations that is a comparable experience to that of able bodied individuals;

**ee.** The facility provides a lavatory for able-bodied individuals, but fails to provide an ADA accessible lavatory for non-able-bodied individuals, including but not limited to the following elements:

     **i.** The bottom reflecting surface of the mirror exceeds the maximum allowed height of 40 inches above the finished floor;

     **ii.** The paper towel dispenser exceeds the maximum allowed obstructed reach range of 44 inches above the finished floor;

     **iii.** The paper towel dispenser exceeds the maximum allowed unobstructed reach range of 48 inches above the finished floor;

**Pie Five**

ff.   The facility affords individuals with disabilities an experience that is not equal to that experience that is afforded to able bodied individuals, in that disabled individuals are not afforded the experience of viewing the food preparation;

gg.   The facility provides a sales/service counter for able-bodied individuals but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that shopping experience afforded to other individuals without disabilities, including but not limited to the following elements:

i.   There is no ADA accessible portion of the sales/service counter that extends the same depth as the non-accessible portion of the sales/service counter;

ii.   The sales/service counter exceeds the maximum allowed height of 36 inches above the finished floor;

iii.   There is no ADA accessible sales/service counter provided 28 inches minimum and 34 inches maximum above the finished floor that allows for the required knee and toe clearance;

iv.   The facility provides a drink selection machine to transact business at the sales/service counter for able-bodied

individuals, but fails to provide the same level of service to non-able-bodied individuals by providing a drink selection machine at an accessible portion of the counter;

v. The facility fails to maintain the accessible features at the sales/service counter that are required to be readily accessible to and usable by individuals with disabilities;

vi. The facility provides a sales/service counter for able-bodied individuals but fails to afford non-able-bodied individuals the full and equal enjoyment to participate in or benefit from, the goods, services, facilities, privileges, advantages, or accommodations that is a comparable experience to that of able bodied individuals;

hh. The facility provides a self-service drink counter for able-bodied individuals but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that shopping experience afforded to other individuals without disabilities, including but not limited to the following elements:

i. There is no ADA accessible portion of the self-service drink counter that extends the same depth as the non-accessible portion of the sales/service counter;

  **ii.** The self-service drink counter exceeds the maximum allowed height of 36 inches above the finished floor;

  **iii.** The facility fails to maintain the accessible features at the self-service drink counter that are required to be readily accessible to and usable by individuals with disabilities;

  **iv.** The facility provides a self-service drink counter for able-bodied individuals but fails to afford non-able-bodied individuals the full and equal enjoyment to participate in or benefit from, the goods, services, facilities, privileges, advantages, or accommodations that is a comparable experience to that of able bodied individuals;

**ii.** The facility fails to provide at least five percent (5%) ADA accessible seating;

## Pool

**jj.** The facility affords individuals with disabilities an experience that is not equal to that experience that is afforded to able bodied individuals, in that disabled individuals are not afforded the experience of the cabana seating area above the bar;

**kk.** The floor mats are not stable, firm, or otherwise secured to the floor;

**ll.** The facility provides a bar for able-bodied individuals but fails to afford non-able-bodied individuals the same opportunity to participate in or

benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that shopping experience afforded to other individuals without disabilities, including but not limited to the following elements:

    i.  There is no ADA accessible portion of the bar counter that extends the same depth as the non-accessible portion of the sales/service counter;

    ii.  The bar counter exceeds the maximum allowed height of 36 inches above the finished floor;

    iii.  There is no ADA accessible bar counter provided 28 inches minimum and 34 inches maximum above the finished floor that allows for the required knee and toe clearance;

    iv.  The bar fails to provide at least five percent (5%) ADA accessible seating;

    v.  The facility fails to maintain the accessible features at the bar counter that are required to be readily accessible to and usable by individuals with disabilities;

mm.  The facility provides a bar counter for able-bodied individuals but fails to afford non-able-bodied individuals the full and equal enjoyment to participate in or benefit from, the goods, services, facilities, privileges,

advantages, or accommodations that is a comparable experience to that of able bodied individuals;

**nn.** The facility provides a "sound bar" for able-bodied individuals but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that shopping experience afforded to other individuals without disabilities, including but not limited to the following elements:

    **i.** There is no ADA accessible portion of the "sound bar" counter that extends the same depth as the non-accessible portion of the sales/service counter;

    **ii.** The "sound bar" counter exceeds the maximum allowed height of 36 inches above the finished floor;

    **iii.** There is no ADA accessible "sound bar" counter provided 28 inches minimum and 34 inches maximum above the finished floor that allows for the required knee and toe clearance;

    **iv.** The "sound bar" fails to provide at least five percent (5%) ADA accessible seating;

    **v.** The facility fails to maintain the accessible features at the "sound bar" that are required to be readily accessible to and usable by individuals with disabilities;

[34]

      **vi.** The facility provides a "sound bar" counter for able-bodied individuals but fails to afford non-able-bodied individuals the full and equal enjoyment to participate in or benefit from, the goods, services, facilities, privileges, advantages, or accommodations that is a comparable experience to that of able bodied individuals;

**oo.** The facility fails to provide an accessible route to the cabanas above the sound bar that is offered to able-bodied individuals;

**pp.** The pool fails to provide a lift which prevents a wheelchair dependent individual from accessing the pool;

**qq.** The facility fails to provide 30x48 inches of required clear floor or ground space for a disabled individual to approach the accessible seating by the pool;

**Rock Shop**

**rr.** The facility provides a sales/service counter for able-bodied individuals but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that shopping experience afforded to other individuals without disabilities, including but not limited to the following elements:

i. There is no ADA accessible portion of the sales/service counter that extends the same depth as the non-accessible portion of the sales/service counter;

ii. The sales/service counter exceeds the maximum allowed height of 36 inches above the finished floor;

iii. There is no ADA accessible sales/service counter provided 28 inches minimum and 34 inches maximum above the finished floor that allows for the required knee and toe clearance;

iv. The facility fails to maintain the accessible features at the sales/service counter that are required to be readily accessible to and usable by individuals with disabilities;

v. The facility provides a sales/service counter for able-bodied individuals but fails to afford non-able-bodied individuals the full and equal enjoyment to participate in or benefit from, the goods, services, facilities, privileges, advantages, or accommodations that is a comparable experience to that of able bodied individuals;

**Hotel Spa**

ss. The facility provides a sales/service counter for able-bodied individuals but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege,

[36]

advantage, or accommodation that is equal to that shopping experience afforded to other individuals without disabilities, including but not limited to the following elements:

   i.  There is no ADA accessible portion of the sales/service counter that extends the same depth as the non-accessible portion of the sales/service counter;

   ii.  The sales/service counter exceeds the maximum allowed height of 36 inches above the finished floor;

  iii.  There is no ADA accessible sales/service counter provided 28 inches minimum and 34 inches maximum above the finished floor that allows for the required knee and toe clearance;

   iv.  The facility fails to maintain the accessible features at the sales/service counter that are required to be readily accessible to and usable by individuals with disabilities;

   v.  The facility provides a sales/service counter for able-bodied individuals but fails to afford non-able-bodied individuals the full and equal enjoyment to participate in or benefit from, the goods, services, facilities, privileges, advantages, or accommodations that is a comparable experience to that of able bodied individuals;

**tt.**   The facility provides benches for able-bodied individuals but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that shopping experience afforded to other individuals without disabilities, including but not limited to the following elements:

    **i.**   The bench fails to meet the minimum required length of 42 inches long minimum;

    **ii.**   The bench fails to meet the required height of 17-19 inches above the finished floor;

    **iii.**   The facility fails to provide a bench that is 20 inches deep minimum and 24 inches deep maximum;

    **iv.**   The bench fails to provide back support and/or be affixed to a wall;

    **v.**   The facility fails to maintain the accessible features at the benches that are required to be readily accessible to and usable by individuals with disabilities;

    **vi.**   The facility provides benches for able-bodied individuals but fails to afford non-able-bodied individuals the full and equal enjoyment to participate in or benefit from, the goods, services, facilities, privileges, advantages, or accommodations

that is a comparable experience to that of able bodied individuals;

## Starbucks

**uu.** The facility provides a sales/service counter for able-bodied individuals but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that shopping experience afforded to other individuals without disabilities, including but not limited to the following elements:

    **i.** There is no ADA accessible portion of the sales/service counter that extends the same depth as the non-accessible portion of the sales/service counter;

    **ii.** The sales/service counter exceeds the maximum allowed height of 36 inches above the finished floor;

    **iii.** There is no ADA accessible sales/service counter provided 28 inches minimum and 34 inches maximum above the finished floor that allows for the required knee and toe clearance;

    **iv.** The facility fails to maintain the accessible features at the sales/service counter that are required to be readily accessible to and usable by individuals with disabilities;

[39]

      **v.** The facility provides a sales/service counter for able-bodied individuals but fails to afford non-able-bodied individuals the full and equal enjoyment to participate in or benefit from, the goods, services, facilities, privileges, advantages, or accommodations that is a comparable experience to that of able bodied individuals;

**vv.** The facility fails to provide at least five percent (5%) ADA accessible seating;

**Valet Desk**

**ww.** The front entrance floor mats are not stable, firm, or otherwise secured to the floor;

**xx.** The facility provides benches for able-bodied individuals but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that shopping experience afforded to other individuals without disabilities, including but not limited to the following elements:

      **i.** The bench fails to meet the minimum required length of 42 inches long minimum;

      **ii.** The bench fails to meet the required height of 17-19 inches above the finished floor;

[40]

    **iii.** The bench fails to provide a bench that is 20 inches deep minimum and 24 inches deep maximum;

    **iv.** The bench fails to provide back support and/or be affixed to a wall;

    **v.** The facility fails to maintain the accessible features at the benches that are required to be readily accessible to and usable by individuals with disabilities;

    **vi.** The facility provides benches for able-bodied individuals but fails to afford non-able-bodied individuals the full and equal enjoyment to participate in or benefit from, the goods, services, facilities, privileges, advantages, or accommodations that is a comparable experience to that of able bodied individuals;

**yy.** The facility provides a valet counter for able-bodied individuals but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that shopping experience afforded to other individuals without disabilities, including but not limited to the following elements:

    i.   There is no ADA accessible portion of the sales/service counter that extends the same depth as the non-accessible portion of the sales/service counter;

    ii.   The valet counter exceeds the maximum allowed height of 36 inches above the finished floor;

    iii.   The facility provides a valet counter for able-bodied individuals but fails to afford non-able-bodied individuals the full and equal enjoyment to participate in or benefit from, the goods, services, facilities, privileges, advantages, or accommodations that is a comparable experience to that of able bodied individuals.

24. To date, the barriers to access and other violations of the ADA still exist and have not been remedied or altered in such a way as to effectuate compliance with the provisions of the ADA.

25. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action.  They are entitled to have their reasonable attorney's fees, costs and expenses paid by the Defendants pursuant to 42 U.S.C. §12205.

26. Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff injunctive relief, including an Order to alter the discriminating facility to make it readily accessible to, and useable by, individuals with disabilities to the extent required by the ADA, and closing the facility until the requisite modifications are completed, and to further order the Defendant to modify their

policies, practices, and procedures, to make reasonable accommodations to individuals with disabilities.

## COUNT TWO
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
## 42 U.S.C. § 12182(b)(2)(A)(ii)

27. Plaintiff re-alleges paragraphs 1-26 above.

28. Pursuant to 42 U.S.C. § 12182(b)(2)(A)(ii) discrimination includes:

> "*a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations.*"

29. By this Complaint, Plaintiffs provide sufficient notice of their demand for an alteration in Defendants' policies, practices, and procedures.

30. The ADA is over twenty-five (25) years old. Defendants know they must comply with the ADA Title III. The ADA Title III requires modifications in policies, practices, and procedures to comply with it, as pled above in the statute. 42 U.S.C. §12182(b)(2)(A)(ii).

31. Nevertheless, Defendant has permitted a multitude of architectural barriers to exist both inside and outside the hotel and casino for years.

32. Defendant either has no policies, practices, and procedures to comply with Title

[43]

III of the ADA, or else they do not abide by them. That is self-evident because the Hard Rock Hotel & Casino is non-compliant in almost every way conceivable to the human mind. Although defendant surely did not try to do every single detail in a noncompliant manner, this ADA disaster could hardly have been worse if it set out on purpose to make itself noncompliant in every way. The rampant architectural barriers previously identified show that Defendant has failed to create, adopt, and/or implement ADA Title III compliance policies, procedures, and practices as to architectural barriers. Defendants failure to provide full and equal use of the facilities, especially its hotel guest rooms, pool area, casino gaming area, parking lot and accessible route to the entrance, not to mention access to the bathroom, and inaccessible sales and service counters, plus the giant list of other barriers identified above prove that it has failed to create, adopt, and/or implement ADA Title III compliance policies, procedures, and practices.

33. Defendant has failed to make reasonable modifications in its policies, practices, and procedures that are necessary to afford its goods, services, facilities, privileges, advantages, or accommodations to individuals with restricted mobility. By failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, Defendant denied services, segregated or otherwise treated Plaintiff differently than other individuals who are not disabled. Pursuant to 42 U.S.C. § 12182(b)(2)(A), Defendant has discriminated against Plaintiff. Defendant will continue that discrimination forever until

[44]

enjoined as Plaintiff requests. The discrimination is described more particularly in the following paragraphs.

34. As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant has no policies, practices, or procedures, or else they have failed to implement them, to ensure compliance at this facility with ADA Title III barrier removal, and to further effectuate that any barrier removal is permanent. 42 U.S.C. § 12182(b)(2)(a)(iv) and (v).

35. As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant's existing policies, practices, and procedures prevent the removal of ADA Title III barriers and do not effectuate the permanent removal of the barriers.

36. As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant's existing policies, practices, and procedures both in effect and/or explicitly call for remediation of ADA Title III barriers only upon demand by the disabled and the policies lack or reject any initiative in compliance-seeking with ADA Title III barrier laws and regulations absent demand by the disabled. Defendant's existing policies, practices, and procedures will continue to discriminate against individuals with restricted mobility.

37. As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant has no policies, practices, and procedures or else they failed to create, implement and maintain policies and

procedures to ensure individuals with disabilities are able to have the same experience at its place of public accommodation as individuals without disabilities, 42 U.S.C. 12182(b)(1)(A), and in particular the opportunity to have full and equal access to all of the goods, services, privileges, advantages, or accommodations of Hard Rock Hotel & Casino.

38. As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant has failed to create, implement, and maintain a policy of complying with ADA building design standards and regulations.

39. Defendant has failed to create, implement, and maintain policies to appropriately operate their reservation system in a manner consistent with ADA compliance, and particularly, (1) describing and identifying ADA accessible features in accessible guest rooms and common areas, and (2) to ensure disabled persons can make online reservations; and (3) to ensure adequate descriptions of rooms that are ADA accessible when attempting to make reservations online; (4) to make the reservation system equally available to the disabled, and in particular to ensure that individuals with disabilities can make reservations for accessible hotel rooms during the same hours and in the same manner as nondisabled individuals (28 C.F.R. § 36.302(e)(1)(i).

40. Defendants have failed to create, implement and maintain policies and procedures to prevent the use of the reservation system and other communications to screen out disabled individuals, so that they are directed to

certain hotel rooms that are not the same rooms offered to other individuals. *See* 42 U.S.C. 12182(b)(2)(A)(i).

41. To date, the Defendant's discriminating policies, practices, and/or procedures have not been reasonably modified to afford goods, services, facilities, privileges, advantages, or other accommodations to individuals with disabilities.

42. A reasonable modification in the policies, practices, and procedures described above will not fundamentally alter the nature of such goods, services, facilities, privileges, advantages, and accommodations. The Plaintiffs hereby demand that Defendant both create and adopt a corporate policy that (1) it will fully comply with Title III, ADA, and all its implementing regulations so that architectural barriers identified above are removed from Defendant's Hotel & Casino consistent with the ADA; (2) it will institute all practices, policies, and procedures required to implement Title III, ADA to both remove architectural barriers and provide full and equal enjoyment; (3) it will provide the disabled, including those with mobility limitations full and equal use of Hard Rock Hotel & Casino; (4) that in particular it will modify or replace the architectural barriers set forth in paragraph 23 to provide full and equal access to individuals with disabilities.

43. As pled above, Premier Entertainment Biloxi, LLC, "owns" the real property and its improvements at 777 Beach Blvd., Biloxi, Mississippi, 39530. 42 U.S.C. § 12182, and it "operates" the establishment located at 777 Beach Blvd., Biloxi,

Mississippi, 39530, more commonly known has Hard Rock Hotel & Casino. Accordingly, pursuant to 42 U.S.C. § 12182, Hard Rock is responsible for creating, implementing, and maintaining policies, practices and procedures, as alleged above.

44. Plaintiffs have been obligated to retain the undersigned counsel for the filing and prosecution of this action. They are entitled to have their reasonable attorney's fees, costs and expenses paid by the Defendants pursuant to 42 U.S.C. § 12205.

45. Pursuant to 42 U.S.C. § 12188 this Court is authorized to enjoin these illegal policies, practices, and procedures.

## COUNT THREE
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### Denial of Full and Equal Enjoyment

46. Plaintiff re-alleges paragraphs 1-45 above.

47. 42 U.S.C. § 12182(a) provides:

> *"No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."*

48. Congress enacted the ADA upon finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms

[48]

for discrimination continue to be a "serious and pervasive social problem." 42 U.S.C. § 12101(a)(2).

49. In response to these findings, Congress explicitly stated that the purpose of the ADA is to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressed discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1)-(2).

50. The ADA provides, inter alia, that it is discriminatory to subject an individual or class of individuals on the basis of a disability "to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity." 42 U.S.C. § 12182(a)(i).

51. The ADA further provides that it is discriminatory "to afford an individual or class of individuals, on the basis of a disability ... with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals." 42 U.S.C. § 12182(a)(ii).

52. Defendant's acts and omissions alleged herein are in violation of the ADA, 42 U.S.C. §§ 12101, et seq., and the regulations promulgated thereunder.

53. The keystone for this analysis is Defendants *must start by considering how their facilities are used by non-disabled guests and then take reasonable steps to provide*

*disabled guests with a like experience. Spector v. Norwegian Cruise Line Ltd.,* 545 U.S. 119, 128–29, 125 S.Ct. 2169, 162 L.Ed.2d 97 (2005) See also, *Baughman v. Walt Disney World Company*, 685 F.3D 1131, 1135 (9th Cir. 2012).

54. Plaintiff Hope Elly was denied full and equal use of the Hard Rock Hotel & Casino facilities, which denied her access to the Hard Rock experience, where Defendant claims you will "live like a rock star". Plaintiff specifically and definitely wants to return to the Defendant's establishment to enjoy all of the different experiences offered at Hard Rock. More specifically, Plaintiff wants to be afforded the same level of service that is offered to non-disabled individuals and which Defendant has failed to provide to Plaintiff as follows: Defendants failed to provide Plaintiff that same Rock Star experience that non-disabled individuals have when at the Hard Rock, which includes not having the opportunity to play all of the games, sit at the bar for a drink, stay in a suite hotel room, use the business center, and sit at the cabanas; Defendants failed to provide Plaintiff that same Rock Star experience that non-disabled individuals have when shopping at the Hard Rock retail store; Defendants failed to provide Plaintiff the opportunity to transact business at the sale and other service counters in the same manner as non-disabled individuals; Defendants failed to provide Plaintiffs that same Rock Star experience that non-disabled individuals have when at the pool which includes not having the opportunity to order drinks in the pool bar, sit on the cabanas, Defendants failed to provide Plaintiff that same hotel experience that non-disabled individuals have when lodging at

Hard Rock; Defendants failed to provide Plaintiff that same hotel experience that non-disabled individuals have when making reservations online at Hard Rock Hotel, which includes the Defendant did not identify the full features of the hotel, that is, the accessible features of the hotel, as well as not actually providing the same types of rooms offered to able-bodied individuals; Defendants failed to provide Plaintiff that same experience that non-disabled individuals have when ordering food or drinks at Ruth Chris; Defendants failed to provide Plaintiff that same dining experience that non-disabled individuals have when ordering and selecting ice cream at Ben & Jerry's; Defendants failed to provide Plaintiffs that same Rock Star drinking and entertainment experience that non-disabled individuals have when at the live event space at Hard Rock; Defendants failed to provide Plaintiffs that same Rock Star experience that non-disabled individuals have when at the sound bar; Defendants failed to provide Plaintiffs that same fun drinking and entertainment experience that non-disabled individuals have when at the outside bar seating area; Defendants failed to provide Plaintiffs that same fun dining experience that non-disabled individuals have when they are dining at the Hard Rock Cafe restaurant itself which includes not being afforded the same views and scenery at the seating areas; Defendants failed to maintain the accessible features of Hard Rock Hotel & Casino that are required to be readily accessible to and usable by Plaintiffs and others similarly situated, such as the maintaining the accessible routes to enter and travel throughout the hotel and casino by, failing to maintain the

walking surfaces, failing to provide proper parking spaces and routes from the spaces to the inside of all the different establishments; Plaintiff was denied the full and equal services and experience of Hard Rock Hotel & Casino's rock star experience; Defendants failed to neutralize its company policies from precluding Plaintiff the opportunity to the full and equal use of the Hard Rock facility; and all the foregoing failures by Defendant inhibited Plaintiff from being afforded the same experience that non-disabled individuals have when at Hard Rock Hotel & Casino.

55. Defendant discriminated against Plaintiff by denying Plaintiff "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the Facility during each visit. Each incident of deterrence denied Plaintiff an equal "opportunity to participate in or benefit from the goods, services, facility, privilege, advantage, or accommodations" of Hard Rock Hotel & Casino.

56. Defendant's conduct and Defendant's unequal treatment to Plaintiff constitutes continuous violations of the ADA and absent a Court ordered injunction from doing so, Defendant will continue to treat Plaintiff and others similarly situated unequally.

57. Defendant's failure to maintain the accessible features that are required to be readily accessible to and usable by individuals with disabilities constitute continuous discrimination and absent a Court ordered injunction, Defendant

will continue to not maintain the required accessible features at Defendant's facility. 28 C.F.R. § 36.211(a).

58. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. She is entitled to have his reasonable attorney's fees, costs and expenses paid by the Defendant pursuant to 42 U.S.C. § 12205.

59. Pursuant to 42 U.S.C. § 12188, this Court is authorized to enjoin these illegal acts of Defendants.

**COUNT FOUR**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**
**42 U.S.C. § 12182(b)(2)(A)(i)**

60. Plaintiffs re-allege paragraphs 1 through 58.

61. Congress enacted the ADA in light of its findings that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. 12101(a)(5).

62. To address this *broad* range of discrimination in the context of public accommodations, Congress enacted Title III, which provides in part: "No individual shall be discriminated against on the basis of disability in the full and

equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. 12182. By its clear text, Title III requires a public accommodation to provide individuals with disabilities more than simple physical access. Congress recognized that "individuals with disabilities continually encounter *various forms of discrimination"* including not only barriers to physical access, but also other forms of exclusion and *relegation to lesser services, programs, activities, benefits, jobs, or other opportunities*. 42 U.S.C. 12101(a)(5); see also H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of physical access to facilities" was only one of several "major areas of discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation.").

63. For that reason, the Act applies not only to barriers to physical access to business locations, but also to any policy, practice, or procedure that operates to deprive or diminish disabled individuals' *full and equal enjoyment* of the privileges and *services* offered by the public accommodation to the public. 42 U.S.C. 12182. Thus, a public accommodation may not have a policy, practice or procedure that excludes individuals with disabilities from services. 42 U.S.C. § 12182(b)(1)(A)(i).

[54]

64. Pursuant to 42 U.S.C. § 12182(b)(2)(A)(i) discrimination includes:

> *The imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations, unless such criteria can be shown to be necessary for the provision of the goods, services, facilities, privileges, advantages, or accommodations being offered.*

65. A place of public accommodation also may not refuse to make reasonable modifications to a policy or practice that has the consequence of denying such individuals access to its services. Nor can a public accommodation refuse to make modifications to a policy or practice that tends to deny individuals with disabilities access to the goods and services of the public accommodation.

66. Defendants utilize the reservation system to screen out disabled individuals, so that they are not offered the same type of rooms as other individuals without disabilities. The screening out process specifically involves only offering hotel rooms that are allegedly accessible that are standard guests rooms without any upgraded amenities that are offered in the non-accessible rooms. The upgraded amenities include but are not limited to the view of the ocean, room size, the type of amenities offered in the room, and among many other features non-disabled guests are offered, including the floor level and suites.

67. The reservation system served to screen Ms. Elly and only allowed her to make reservations for either (1) a two queen bed guest room in the royal tower; or (2) a king bed guest room in the royal tower; or (3) a two queen bed guest room in

the platinum tower; or (4) a king bed guest room in the platinum tower. The reservation system did not offer Ms. Elly any of the other types of rooms that Hard Rock Hotel offers such as (1) the cabana suite in the platinum tower, (2) the sky suite in the platinum tower, (3) the corset suite in the royal tower, (4) the center suite in the royal tower, and (5) the panoramic suite in the royal tower. Moreover, Defendant's reservation system screened out Ms. Elly by not providing her any types of views that are offered with all of the other hotel rooms and suites described above, which includes ocean view and non-ocean view.

68. These are precisely the sorts of claims Title III was intended to cover. The process for selecting an ADA accessible hotel room is no different than the implementation of eligibility criteria in other contexts that are clearly covered by the Act. For example, there is no question that the administration of admission testing by a private secondary school falls within the scope of Title III. See Section 12189; 28 C.F.R. 36.309. There would be little question that the ADA would apply, and would be violated, if Defendant screened guests as they entered the Hotel Lobby, sending home guests on the grounds that they were deaf or physically disabled or suffered from diabetes or any other disability. See 28 C.F.R. Pt. 36 App. B, p. 640 (commentary to 28 C.F.R. 36.301) ("It would violate this section to establish exclusive or segregative eligibility criteria that would bar, for example, all persons who are deaf from playing on a golf course or all individuals with cerebral palsy from attending a

movie theater."). That disabled individuals are screened out by an automated hotel reservation system, rather than by an admission policy administered at the studio door is of no consequence under the statute.

69. Defendants' failure to modify this practice necessary to ensure Plaintiff the full and equal enjoyment of the Hard Rock Hotel & Casino, has resulted in the complete exclusion from making reservations online in the same manner as other individuals who do not have disabilities. See Section 12182(b)(2)(A)(ii)-(iii).

70. The screening process violates the Americans with Disabilities Act by directly and intentionally screening out disabled individuals for the purpose of preventing the disabled from being afforded the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations, at Hard Rock Hotel. 42 U.S.C. § 12182(b)(2)(A)(i).

71. The screening of individuals with disabilities is not necessary to provide accommodations. because no accommodations are provided.

72. To date, the Defendant's discriminating actions continue.

73. As pled above, Premier Entertainment Biloxi, LLC, "owns" the real property and its improvements at 777 Beach Blvd., Biloxi, Mississippi, 39530. 42 U.S.C. § 12182, and "operates" the establishment located at 777 Beach Blvd., Biloxi, Mississippi, 39530, more commonly known has Hard Rock Hotel & Casino. It is therefore, pursuant to 42 U.S.C. § 12182, responsible for creating,

[57]

implementing, and maintaining policies, practices and procedures, as alleged above.

74. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. She is entitled to have her reasonable attorney's fees, costs and expenses paid by the Defendant pursuant to 42 U.S.C. § 12205.

75. Pursuant to 42 U.S.C. § 12188 this Court is authorized to enjoin these illegal actions by Defendant.

## COUNT FIVE
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
## 28 C.F.R. § 36.302

76. Plaintiff re-alleges paragraphs 1 – 74.

77. The Defendant has violated the ADA by failing to ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as nondisabled individuals, pursuant 28 C.F.R. § 36.302(e)(1)(i), and by failing to describe the accessible features in the hotel and guest rooms offered through its reservations' service both in advertisements and online in enough detail to reasonably permit individuals with disabilities to assess independently whether the hotel rooms meet her accessibility needs, pursuant to 28 C.F.R. § 36.302(e)(1)(ii).

78. Ms. Elly could not determine from the existing systems and website whether her room was accessible other than Defendant labeling and portraying the room as ADA accessible.

79. To date, the Defendant's discriminating actions continue.

80. As pled above, Premier Entertainment Biloxi, LLC, "owns" the real property and its improvements at 777 Beach Blvd., Biloxi, Mississippi, 39530. 42 U.S.C. § 12182. And "operates" the establishment located at 777 Beach Blvd., Biloxi, Mississippi, 39530, more commonly known has Hard Rock Hotel & Casino and is therefore, pursuant to 42 U.S.C. § 12182, responsible for creating, implementing, and maintaining policies, practices and procedures, as alleged above.

81. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. She are entitled to have their reasonable attorney's fees, costs and expenses paid by the Defendants pursuant to 42 U.S.C. § 12205.

82. Pursuant to 42 U.S.C. § 12188 this Court is authorized to enjoin these illegal actions by Defendants.

## COUNT SIX
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### 42 U.S.C. § 12183(a)(1)

83. Plaintiff re-alleges paragraphs 1 - 82.

84. 42 U.S.C. § 12183(a)(1) provides:

> [Discrimination includes] a failure to design and construct facilities for first occupancy later than 30 months after July 26, 1990, that are readily accessible to and usable by individuals with disabilities, except where an entity can demonstrate that it is structurally impracticable to meet the requirements of such subsection in accordance with standards set forth or

incorporated by reference in regulations issued under this subchapter.

85. Congress passed the ADA in part because "historically, society has tended to isolate and segregate individuals with disabilities, and such forms of discrimination ... continue to be a serious and pervasive social problem." 42 U.S.C. § 12101(a)(2). Congress found that this discrimination included "segregation [] and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." Id. § 12101(a)(5). In its Preamble to the title III regulation, the Department of Justice recognized that persons in wheelchairs should have the same opportunities to enjoy the goods and services and other similar events of a public accommodation with their families and friends, just as other non-disabled individuals do. The DOJ further recognized that providing segregated accommodations and services relegates persons with disabilities to the status of *second-class citizens*. 28 C.F.R. pt. 36, App. B, § 36.203.

86. To eliminate such segregation Congress enacted the requirement that facilities be "readily accessible to and usable by individuals with disabilities". This very requirement is intended to enable persons with disabilities "*to get to, enter and use a facility*." H.R. Rep. No. 101-485(III), at 499-500 (1990). It requires "a high degree of convenient accessibility," id., as well as access to the same services that are provided to members of the general public. "For new construction and alterations, the purpose is *to ensure that the service offered to persons with disabilities is equal to the service offered to others*." Id.

87. As the legislative history makes clear, the ADA is geared to the future -- the goal being that, over time, access will be the rule rather than the exception. Thus, the ADA only requires modest expenditures to provide access in existing facilities, *while requiring all new construction to be accessible.* H.R. Rep. 485, Part 3, 101st Cong., 2d Sess. 63 (1990).

88. To realize its goal of a fully accessible future, Congress required that all newly constructed facilities be designed and constructed according to architectural standards set by the Attorney General. 42 U.S.C. §§ 12183(a), 12186(b). Those Standards for Accessible Design ("Standards") are incorporated into the Department of Justice's regulation implementing title III of the ADA, 28 C.F.R. Part 36, Appendix A. The Standards set architectural requirements for newly constructed hotels that apply to all areas of the facility, from parking areas, exterior walkways, and entrances to lobbies, interior stairways, corridors, pools and guest rooms.

89. Defendant, as the "owner" and "operator" of the Hard Rock Hotel & Casino was directly involved in the design and construction of the Hard Rock Hotel & Casino for first occupancy after January 1993.

90. Defendant was and is required to design and construct the Hotel & Casino to be "readily accessible to and usable by individuals with disabilities." Defendant violated the statute by failing to design and construct *its hotel and casino to be* readily accessible to and usable by individuals with disabilities including individuals who use wheelchairs. Defendant further violated the statute by

failing to design and construct its hotel & casino in compliance with the ADA during planned alterations as described throughout this complaint.

91. To date, the Defendant's discriminating actions continue.

92. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. She is entitled to have her reasonable attorney's fees, costs and expenses paid by the Defendant pursuant to 42 U.S.C. § 12205.

93. Pursuant to 42 U.S.C. § 12188 this Court is authorized to enjoin these illegal actions by Defendants.

**WHEREFORE**, premises considered, Hope Elly demands judgment against the Defendant on Counts One through Six and request the following injunctive and declaratory relief:

1.   That the Court declare that the property owned and business operated by the Defendants as well as all Defendant's illegal actions described herein violate the Americans with Disabilities Act, as more particularly described above;

2.   That the Court enter an order enjoining the Defendant to alter the facilities to make them accessible to and usable by individuals with disabilities to the full extent required by Title III of the ADA, to comply with 42 U.S.C. § 12182(b)(2)(A)(iv) and (v) and their implementing regulations, as stated in Count One;

3. That the Court enter an order, in accordance with Count Two, directing the Defendants to modify their policies, practices, and procedures both to remedy the numerous ADA violations outlined above, in violation of 42 U.S.C. § 12182(b)(2)(A)(ii), and to permanently enjoin Defendants from operating its stores in violation of the ADA Title III in the future;

4. That the Court enter an order directing the Defendants to provide Plaintiffs full and equal access to Hard Rock Hotel & Casino's rock star experience and further order Defendant to maintain the required accessible features at the store so that Plaintiff and others similarly situated are offered the rock star experience that is offered to non-disabled individuals, as stated in Count Three;

5. That the Court enter an order enjoining Defendant's from using the reservation system to screen and defer to another location individuals with disabilities, as stated in Count Four.

6. That the Court enter an order enjoining compliance with federal regulations and statutes as to the adequacy of the reservation system for individuals with disabilities, as stated in Count Five.

7. That the Court enter an Order directing the Defendant to evaluate and neutralize its policies, practices, and procedures towards persons with disabilities for such reasonable time so as to allow them to undertake and complete corrective procedures;

8.    That the Court enjoin Defendant to remediate the Hard Rock Hotel & Casino to the proper level of accessibility required for the design and construction of the facility for first occupancy, as stated in Count Six;

9.    That the Court award reasonable attorney's fees, costs, (including expert fees) and other expenses of suit, to plaintiff; and

10.    That the Court award such other, further, and different relief as it deems necessary, just, and proper.

Respectfully Submitted, this the 18th Day of July, 2016.

/s/

**Bradley D. McAdory**
**BPR # MS-10545**
The ADA Group LLC
2047 Carter Hill Road
Montgomery, Alabama 36106
334.819.4030 p
334.819.4032 f
BDM@ADA-Firm.com
*Attorney for the Plaintiff*

[64]

## CERTIFICATE OF SERVICE

This is to certify that I have this day filed with the Clerk of Court the aforementioned Complaint for service of process by USPS mail or electronic mail, postage prepaid and properly addressed this 18th day of July, 2016 to the following:

**PREMIER ENTERTAINMENT BILOXI LLC**
**c/o Registered Agent**
**attn.: Todd Raziano**
**777 Beach Blvd**
**Biloxi, MS 39530**

/s/ _____

**Bradley D. McAdory**
**BPR # MS-10545**
The ADA Group LLC
2047 Carter Hill Road
Montgomery, Alabama 36106
334.819.4030 p
334.819.4032 f
BDM@ADA-Firm.com
*Attorney for the Plaintiff*